IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PLANO CHAMBER OF COMMERCE; AMERICAN HOTEL AND LODGING ASSOCIATION; ASSOCIATED BUILDERS AND CONTRACTORS; INTERNATIONAL FRANCHISE ASSOCIATION; NATIONAL ASSOCIATION OF CONVENIENCE STORES; NATIONAL ASSOCIATION OF HOME BUILDERS; NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS; NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC.; NATIONAL RETAIL FEDERATION; RESTAURANT LAW CENTER; TEXAS RESTAURANT ASSOCIATION; COOPER GENERAL CONTRACTORS; DASE BLINDS, | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No.  4:24-cv-468 |
| Plaintiffs, | | |
| vs. | | |
| JULIE SU, ACTING SECRETARY, UNITED STATES DEPARTMENT OF LABOR, in her official capacity; JESSICA LOOMAN, ADMINISTRATOR, WAGE AND HOUR DIVISION, U.S. DEPARTMENT OF LABOR, in her official capacity; and UNITED STATES DEPARTMENT OF LABOR, | | |
| Defendants. | | |

## **COMPLAINT**

On behalf of themselves and the millions of businesses and employers they represent in Texas and throughout the United States, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1.      In 2017, this Court permanently enjoined a Department of Labor ("Department" or "DOL") regulation (the "2016 Rule") which attempted to dramatically raise the minimum salary required for executive, administrative, or professional ("EAP") employees to be classified as exempt from overtime pay under the Fair Labor Standards Act ("FLSA"). The Court also declared unlawful the Department's attempt to automatically increase the salary threshold on a triennial basis thereafter. *See State of Nevada et al. v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016) (preliminarily enjoining 2016 Rule) (*Nevada I*); 275 F. Supp. 3d 795 (E.D. Tex. 2017) (permanently invalidating 2016 Rule) (*Nevada II*). Among other things, this Court found that "the Department's authority is limited by the plain meaning of the words in the [FLSA] and Congress's intent." *Id*. at 805. Accordingly, this Court prohibited the Department from increasing the minimum salary for exemption to a level that "essentially make[s] an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level." *Id*. at 806. The Court further held unlawful the Department's attempt to "make salary rather than an employee's duties determinative of whether a 'bona fide executive, administrative, or professional capacity employee' should be exempt from overtime pay." *Id*. at 807. Finally, the Court struck down the Department's indexing automatic increases in the salary threshold without notice or comment as required by law.[1]

2.      Plaintiffs are back before this Court because the Department has done it again. In direct defiance of this Court's previous order, the Department has issued yet another rule raising

---

[1] Pursuant to Local Rule CV-42, Plaintiffs hereby notify the Court that this action involves subject matter that comprises all or a material part of the subject matter and operative facts of the above described action previously decided by this Court, in which many of the same plaintiffs  and the defendant Department of Labor participated.

the minimum salary for the EAP exemption far beyond a level which DOL is permitted to adopt, and again included an unlawful triennial "escalator" provision. *See* "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," 89 Fed. Reg. 32842 (April 26, 2024) (the "2024 Overtime Rule" or "2024 Rule"). Like its unlawful predecessor, the 2024 Rule will impermissibly deprive millions of employees— including countless workers employed by Plaintiffs and their members in Texas and across the country—of their exempt status. The Department's 2024 Rule again will "essentially make an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum  salary level," and will unlawfully "make salary rather than an employee's duties determinative of whether a 'bona fide executive, administrative, or professional capacity employee' should be exempt from overtime pay." *Nevada II*, 275 F. Supp. 3d at 806-07.

3.      The Department's 2024 Overtime Rule largely repeats the errors of the 2016 Rule and fails to address the flaws previously identified by this Court. The Department's new EAP salary thresholds far exceed the limits of the statutory authority recognized by this Court; indeed, as further discussed below, the Fifth Circuit is presently considering whether the FLSA authorizes any minimum salary thresholds at all. *See Mayfield v. U.S. Dept. of Labor*, No. 23-50724 (5th Cir.) (appeal pending, briefing completed).[2] Moreover, the Department has failed to adequately justify the dramatic change in policy embodied in the Rule, failed to take into account the strong reliance

---

[2] *See also Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39, 67 (Kavanaugh, J. dissenting) ("The [FLSA] focuses on whether the employee performs executive duties, not how much an employee is paid or how an employee is paid. So it is questionable whether the Department's regulations—which look not only at an employee's duties but also at how much an employee is paid and how an employee is paid—will survive if and when the regulations are challenged as inconsistent with the Act.").

interests of the regulated community,  and failed to meaningfully consider reasonable alternatives, all in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq*.

4.      The first phase of the 2024 Rule is scheduled to go into effect on July 1, 2024, followed by a second, even more substantial increase in the minimum salary for exemption on January 1, 2025. When fully effective as of January 1, 2025, the new Overtime Rule will increase the minimum annual EAP salary threshold from the current $35,568 to $58,656,[3] an increase of 65%. *See* 89 Fed. Reg. 32971 (29 C.F.R. § 541.600). It likewise will increase the minimum salary for exempting "highly compensated employees" ("HCEs") from $107,432 to $151,164 as of January 1, 2025 (a 41% increase over the current HCE threshold). *Id.*at 32972 (29 C.F.R. § 541.601).[4]  Finally, like the unlawful 2016 Rule, the 2024 Rule includes an unlawful automatic indexing provision that will further increase the EAP minimum salary threshold without the notice-and-comment rulemaking required by the APA, *see id.* at 32973 (29 C.F.R. § 541.607). *Contra*, *Nevada II*, 275 F. Supp. 3d  at 808.

5.      Countless employer members of the Plaintiff associations - across many industries, job categories, and geographic areas - will suffer irreparable harm from the loss of their employees' previously exempt status under the 2024 Rule. The costs of compliance will force many smaller employers and non-profits operating on fixed budgets to cut critical programming, staffing, and services to the public. Many employers will lose the ability to effectively and flexibly manage their workforces upon losing the exemption for frontline executives, administrators, and professionals.

---

[3] The new Rule first increases the EAP threshold from the current $35,568 annually to $43,888 effective July 1, 2024, with the full 65% increase to $58,656 becoming effective on January 1, 2025. 89 Fed. Reg. 32971, 29 CFR 541.600. The threshold will then increase automatically as of July 1, 2027, and every three years thereafter. *See* 29 C.F.R. 541.607.

[4] Again, the 2024 Rule first raises the HCE threshold from $107,432 to $132,964 effective July 1, 2024, with the full 41% increase to $151,164 becoming effective January 1, 2025, and indexed every three years thereafter.

Millions of employees across the country will have to be reclassified from salaried to hourly workers, resulting in restricted work hours that will deny them opportunities for advancement and hinder their job performance—to the detriment of their employers, their customers, and their own careers. Finally, the inclusion of the unlawful escalator provision will exacerbate the harmful impact on businesses, both large and small, and will add to the rampant inflation that is already harming the economy as a whole.

6.     Because the first phase of the increased salary threshold is scheduled to take effect on July 1, 2024, and the full impact will be felt a mere six months later on January 1, 2025, expedited consideration of this Complaint is requested in order to avoid irreparable harm to both employers and employees who will be subject to new overtime requirements of the Department's unlawful Rule.

## PARTIES

7.     Plaintiff Plano Chamber of Commerce ("Plano Chamber") is committed to maximizing business development and economic growth of the Plano, Texas community through advocacy, education, innovation, and collaboration. The Plano Chamber was the lead business plaintiff on the *Nevada II* case and again joins with other business associations bringing this action on behalf of its members who will be harmed by the 2024 Overtime Exemption Rule. These members employ executive, administrative, and/or professional ("EAP") employees whose job duties make them lawfully exempt from overtime under the current minimum salary requirements. But some of these employees are threatened with losing their exempt status under the new Rule because their salaries are below the dramatically increased minimum salaries about to be imposed. As a result, the Plano Chamber's members will face increased labor costs and harm to their employee relations if the new Rule is allowed to take effect.

8.      Plaintiff American Hotel and Lodging Association ("AHLA") is the leading voice representing every segment of the hotel industry including major chains, independent hotels, management companies, REITs, bed and breakfasts, industry partners, and more. AHLA represents the interests of its members in regulatory matters relating to employment. In addition, AHLA itself is harmed by the new Overtime Rule, as it is also subject to the minimum wage, overtime, and recordkeeping requirements imposed by the FLSA for non-exempt employees.

9.      Plaintiff Associated Builders and Contractors ("ABC") is a national construction industry trade association representing more than 23,000 chapter members. The vast majority of ABC members are small businesses, and they employ many workers who are currently exempt under the established salary threshold, whose exempt status will be jeopardized under the Department's 2024 Rule, as is also true of ABC itself. ABC is bringing this action on its own behalf as well as on behalf of its member companies in the construction industry, including plaintiff CGC (referenced below).

10.     Plaintiff International Franchise Association ("IFA") is a membership organization of franchisors, franchisees, and suppliers.  The IFA's membership includes more than 1,350 franchisor companies and more than 12,000 franchisees nationwide, including in Texas. IFA brings this action on behalf of itself and its members who employ EAP workers whose exempt status is jeopardized by the 2024 Rule.

11.     Plaintiff National Association of Convenience Stores ("NACS") advances the role of convenience stores as positive economic, social, and philanthropic contributors to the communities they serve. The U.S. convenience store industry, with 148,000 stores selling fuel, food and merchandise, serves 160 million customers daily. NACS serves the convenience and fuel retailing industry by, among other things, working to protect the best interests of the convenience

and fuel retailing industry before Congress and federal agencies NACS is bringing this action on its own behalf and on behalf of its members whose employees' exempt status is jeopardized by the challenged Rule.

12.     Plaintiff National Association of Home Builders ("NAHB") is a national trade association whose chief mission is that all Americans have access to safe, decent, and affordable housing. NAHB is a federation of more than 700 state and local associations, representing over 140,000 individual members in Texas and across the country, who are home builders, remodelers, and others in housing-related industries, such as housing finance, manufacturing, and building supplies. NAHB is bringing this action on behalf of its members and local associations whose exempt employees are at risk of losing their exempt status because of the 2024 Rule.

13.     Plaintiff National Association of Wholesaler-Distributors ("NAW") is an employer and a non-profit, non-stock, incorporated trade association that represents the wholesale distribution industry—the essential link in the supply chain between manufacturers and retailers as well as commercial, institutional, and governmental end users. NAW is made up of direct member companies and a federation of 59 national, regional, and state associations across 19 commodity lines of trade which together include approximately 35,000 companies operating nearly 150,000 locations throughout the nation. The overwhelming majority of wholesaler-distributors are small-to-medium-size, closely held businesses. As an industry, wholesale distribution generates more than $8 trillion in annual sales volume providing stable and well-paying jobs to more than 6 million workers. NAW is bringing this action on its own behalf as well as on behalf of its members' companies who employ exempt employees whose status is placed at risk by the 2024 Rule.

14.     Plaintiff the National Federation of Independent Business ("NFIB") is the nation's leading small business advocacy association, representing members in all 50 states and Washington, D.C. NFIB represents about 325,000 independent business owners who are adversely impacted by the 2024 Rule, as is NFIB itself. NFIB brings this action on behalf of itself and its members.

15.     Plaintiff National Retail Federation ("NRF") is the world's largest retail trade association, representing retailers of all types and sizes across the United States. NRF brings this action on behalf of itself and its members, whose exempt employees' status is placed at risk by the 2024 Rule.

16.     Plaintiff Restaurant Law Center ("RLC") is the only independent public policy organization created specifically to represent the interests of the food service industry in the courts. This labor-intensive industry is comprised of over one million restaurants and other foodservice outlets employing nearly 16 million people—approximately 10 percent of the U.S. workforce, including many exempt employees throughout the country. As is currently the case, the RLC participates in litigation to provide courts with the industry's perspective on legal issues that have the potential to significantly impact its members and its industry at large. The RLC is bringing this action on behalf of itself and its members, who will be adversely impacted by the 2024 Rule when attempting to properly classify exempt employees.

17.     Plaintiff Texas Restaurant Association ("TRA") is a non-profit organization with thousands of members throughout Texas, including many members in this district who will be injured by the 2024 Rule. The TRA is the leading business association for Texas' $106 billion foodservice industry, which spans upwards of 56,000 locations throughout the state, employing a workforce of 1.4 million – 11% of the state's employment – many of whose exempt status is

jeopardized by the Rule. The TRA is bringing this action on behalf of itself and its members whose employees' exempt status is placed at risk by the 2024 Rule.

18.     Plaintiff Cooper General Contractors ("CGC") is a minority-owned, family-oriented commercial construction contractor based in Plano, Texas. CGC is a member of plaintiff ABC. CGC employs a number of executive, administrative, and/or professional employees who are lawfully exempt from overtime under the Fair Labor Standards Act as it is currently enforced by the U.S. Department of Labor. Under the Department's new Rule, CGC will face increased labor costs and harm to its employee relations unless the company dramatically increases its exempt salary structure to the levels mandated by the new Rule.

19.     Plaintiff DASE Blinds ("DASE") is a family-owned and operated Bloomin' Blinds franchise based in Carrollton, Texas providing custom window treatments and repairs. DASE employs a number of executive, administrative, and/or professional employees who are lawfully exempt from overtime under the FLSA as it is currently enforced by the U.S. Department of Labor. Some of DASE's exempt employees, who are paid on a salary basis and perform exempt job duties, earn salaries above the threshold specified in the Department's current overtime rule, but less than the amounts specified in the 2024 Rule. DASE will face increased labor costs and harm to its employee relations because currently exempt employees will lose their exempt status unless the company dramatically increases its salary structure to the levels mandated by the new Rule.

20.     As a result of the new Overtime Rule, all of the Plaintiffs and/or their identifiable member employers will be irreparably harmed in their ability to maintain the overtime exemption for executive, administrative, and professional employees whose job duties would otherwise qualify them for exemption from overtime payments under the FLSA. Plaintiffs and their members will incur legal, payroll, and accounting costs to comply with the new Rule, both before and after

its effective date. They will also suffer irreparable harm to their ability to manage their businesses due to the loss of flexibility in the hours worked by previously exempt executive, administrative, professional, and computer employees and the forced conversion of millions of previously exempt salaried employees to an hourly basis.

21.     Defendant Julie Su is functioning as the Acting Secretary of the Department of Labor, although she has not been confirmed by the Senate to that position.

22.     Defendant Jessica Looman is the Administrator of the Wage and Hour Division of the U.S. Department of Labor, which promulgated the challenged rule.

23.     Acting Secretary Su and Administrator Looman are sued in their official capacities and the relief sought extends to all of their successors, employees, officers, and agents.

24.     Defendant U.S. Department of Labor is an agency of the United States and published the 2024 Overtime Rule in the *Federal Register*.

## JURISDICTION, VENUE, AND STANDING

25.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it is a civil action arising under the Constitution and laws of the United States, including the FLSA, 29 U.S.C. § 201 *et seq.*, and the APA, 5 U.S.C. § 501 *et seq.*

26.     This Court is authorized to award relief under the APA, 5 U.S.C. §§ 701-706 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

27.     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because one or more of the Plaintiffs are based within the judicial district of this Court, and because this is a related case to the *Nevada v. Dep't of Labor* litigation, in which most of the trade association Plaintiffs participated.

28.     In *Nevada II*, this Court held that the trade association plaintiffs had standing to challenge the Department's rulemaking due to harm caused by drastically increasing the minimum salary required to exempt EAP employees from overtime requirements.  The Court specifically found that these and other similarly situated business associations and their members "would incur significant payroll, accounting, and legal costs to comply with the Final Rule, both before and after its effective date" and an increase in the salary threshold "would affect how [the associations] and their members manage executive, administrative, and professional capacity employees who now qualify for overtime pay." *Nevada II*, 275 F. Supp. 3d at 800.

29.     Most of the association Plaintiffs have organizational standing in their own right as employers of exempt employees whose status will be directly affected by the new Rule. As a direct consequence of the new Rule, such Plaintiffs will face increased labor costs because, like their members, as employers they are subject to the minimum wage, overtime, and recordkeeping requirements imposed by the FLSA with respect to currently exempt employees who will become non-exempt under the new Overtime Rule.

30.     All of the association Plaintiffs have standing to bring this lawsuit on behalf of their various members.  This is because association Plaintiffs' members have standing to sue in their own right due to increased costs they will suffer under the Rule, including required minimum wage and overtime wages for exempt employees who will be converted to non-exempt status under the Rule, as well as substantial costs as they modify their businesses to comply and to account for those risks.  Plaintiffs and their members are effectively the object of regulation under the Rule, and as such, will be directly injured by its heightened burdens and new regulatory requirements. *See*, *e.g.*, *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) ("If

a plaintiff is an object of a regulation there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.").

31.     In addition, the Rule conflicts with each association Plaintiff's policy objectives, challenging the Rule is germane to each association Plaintiff's purpose, and neither the claims asserted nor the relief requested requires association Plaintiffs' individual members to participate, as this complaint raises questions of law based on the Administrative Record. Accordingly, association Plaintiffs each have associational standing. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977) (setting out three-prong test for associational standing).

## FACTUAL BACKGROUND

### A.     The FLSA's Exemption of Executive, Administrative, Professional, and Computer Employees, As Applied By This Court in 2017.

32.     The Fair Labor Standards Act, enacted by Congress in 1938 during the Great Depression, generally requires covered employers to pay their employees at least the federal minimum wage (currently $7.25 per hour) for all hours worked, and requires overtime pay to nonexempt employees at one and one-half an employee's regular rate of pay for all hours worked over 40 in a single workweek. *See* 29 U.S.C. § 206 (minimum wage), § 207 (overtime).

33.     Among many other exemptions from the minimum wage and/or overtime requirements, Congress created the EAP exemption for "any employee employed in a bona fide executive, administrative, or professional … capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Secretary), subject to the provisions of [the APA]." 29 U.S.C. § 213(a)(1). Congress did not make reference to any minimum salary test to further restrict the EAP exemption.

34.     As this Court further observed in *Nevada II,* 275 F. Supp. 3d at 805-06:

> Congress unambiguously intended the exemption to apply to employees who perform 'bona fide executive, administrative, or professional capacity' duties. *** Specifically the Department's authority is limited to determining the essential qualities of, precise signification of, or marking the limits of those "bona fide executive, administrative, or professional capacity" employees who perform exempt duties and should be exempt from overtime pay. With this said, the Department does not have the authority to use a salary-level test that will effectively eliminate the duties test as prescribed by Section 213(a)(1). *** Nor does the Department have the authority to categorically exclude those who perform "bona fide executive administrative, or professional capacity" duties based on salary level alone. In fact, the Department admits, "the Secretary does not have the authority under the FLSA to adopt a 'salary only' test for exemption."

35.     While the Court acknowledged the Department's use of a "permissible minimum salary level" under the Fifth Circuit's holding in *Wirtz v. Mississippi Publishers Corp*., 364 F.2d 603, 608 (5th Cir. 1966) (now being revisited by the Fifth Circuit in the *Mayfield* case), this Court rightly found that the Department's longstanding policy requires the minimum salary level to be used only as a floor to "screen[] out the obviously nonexempt employees, making an analysis of duties in such cases unnecessary." 275 F. Supp. 3d at 806, citing Harry Weiss, Report and Recommendations on Proposed Revisions of Regulations, Part 541, at 7-8 (1949). This Court accordingly held that "any new figure recommended should also be somewhere near the lower end of the range of prevailing salaries for these employees." *Id.*, citing Weiss, at 11-12.[5]

---

[5] Consistent with this Court's holding, between 1940 and 2019, DOL has with few exceptions set the minimum salary level for exemption by studying the salaries actually paid to exempt employees and setting the minimum salary at no higher than the 20th percentile in the lowest-wage regions, the smallest size establishment groups, the smallest-sized cities, and lowest-wage industries. *See* "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," 84 Fed. Reg. 51230, 51235-37 (Sept. 27, 2019) (detailing historic development and application of salary test methodology). The unlawful 2016 Rule sought to set the minimum EAP salary at the 40th percentile of earnings of full-time salaried workers in the lowest wage Census region (the South).

36.     Based upon the foregoing legal analysis in *Nevada II*, this Court found that it was unlawful for the Department to increase the minimum salary level from $455 per week ($23,660 annually) to $913 per week ($47,476 annually). The Court held that "this significant increase would essentially make an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level." The Court took particular note that "entire categories of previously exempt employees who perform bona fide executive, administrative, or professional capacity duties would now qualify for the EAP exemption based on salary alone." 275 F. Supp. 3d at 806 (citing the Department's 2016 Rule which estimated that 4.2 million workers would have lost their exempt status solely because of the increased salary threshold).

37.     In 2019, after notice-and-comment rulemaking, the Department issued a new regulation, still in effect, raising the EAP salary threshold to $35,568 and the HCE to $107,432. *See* "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," 84 Fed. Reg. 51230 (Sept. 27, 2019) (the "2019 Final Rule"). The 2019 Final Rule used the identical methodology used in the 2004 Final Rule, setting the threshold at the 20th percentile of full-time salaried workers in the lowest-wage census region (the South) and/or in the retail industry nationally using current data. That increase was nevertheless challenged in the *Mayfield* case on the ground that the statute does not authorize any minimum salary threshold for EAP exemption. The district court declined to enjoin the rule under the precedent of *Wirtz*, and the appeal from that decision is pending before the Fifth Circuit.

### D.     The 2024 Overtime Rule

38.     Notwithstanding the statutory mandate, longstanding regulatory precedent, and the prior decisions of this Court, DOL published its new Overtime Rule on April 26, 2024. Just as the enjoined 2016 Overtime Rule purported to do, the 2024 Rule establishes a minimum salary test

14

that will exclude from the white-collar exemptions millions of currently exempt EAP workers. This time, the Department has adopted without rational basis a minimum salary set at thirty-five percent or more of all salaried workers in the southern census region (which includes Maryland, the District of Columbia, and Virginia, three of the top ten median income states). Under the new Overtime Rule, effective January 1, 2025, the minimum salary for exempt employees will increase 65 percent, from $684 per week to $1,128 per week ($35,568 to $58,656, annualized). *See* 89 Fed. Reg. at 32971.

39.    At $1,128 per week, the new minimum salary level will result in defeating the exemption for more than four million individuals who could reasonably be classified as bona fide executive, administrative, or professional employees on the basis of their duties.[6] Just as in 2017, the Department's new salary threshold is so high that it is no longer a plausible proxy for delimiting which jobs fall within the statutory terms "executive," "administrative," or "professional." The 2024 Overtime Rule thus contradicts the congressional requirement to exempt such individuals from the minimum wage and overtime requirements of the FLSA.

40.    In an implicit acknowledgement that its new minimum salary level will exclude many employees who perform exempt job duties, the 2024 Rule permits employers to count nondiscretionary bonuses, incentives, and commissions toward up to ten percent of the minimum salary level for exemption. *See 89* Fed. Reg. at 32972 (29 C.F.R. § 541.602). However, this provision fails to prevent the Rule's radical departure from the intent of Congress as expressed in

---

[6] DOL projects that in the first year that the 2024 Rule is effective, more than four million employees all over the country will lose their exempt status. *See* 89 Fed. Reg. at 32900 & Table 4. By Year 10, because of the automatic increases to the minimum salary level, DOL predicts that almost 6 million employees will have lost their exempt status. *Id*. These numbers are closely proximate to the number of employees who this Court found would unlawfully be deprived of their exempt status in 2017.

the statutory exemption. In particular, the inclusion of bonuses, incentives, and commissions is so restricted that it fails to mitigate and actually exacerbates the impact of the new Overtime Rule's exclusion of millions of employees who perform exempt duties, because it arbitrarily excludes discretionary bonuses, incentives, and commissions that may constitute more than ten percent of an exempt employee's salary, as well as a host of other types of compensation (*e.g.*, profit-sharing, stock options, employer-funded retirement benefit, and deferred compensation).

41.     As noted above, the 2024 Rule also establishes an indexing provision, which automatically sets in motion an update to the minimum salary requirements to even higher levels every three years. 89 Fed. Reg. 32973 (29 C.F.R.§ 541.607). The Rule's automatic indexing will cause the salary threshold to even further depart from any meaningful approximation of the terms "executive," "administrative," and "professional" within a short period of time, without any notice or comment requirement. This measure again violates the express holding of this Court. *Nevada II,* 275 F. Supp. 3d at 808.

42.     There is no basis to conclude that Congress authorized the Department to index the salary level test for exemption under section 213(a)(1). Congress has provided for automatic indexing in numerous other statutes, such as the cost of living increases for Social Security benefits in the Social Security Act, P.L. 106-554. But in the 80+ year history of the FLSA, Congress has never provided for automatic increases of the minimum wage. Congress also has never indexed the minimum hourly wage for exempt computer employees under 29 U.S.C. § 213(a)(17), the tip credit wage under 29 U.S.C. § 203(m), or any of the alternative wage thresholds in the Act. Most important, Congress has never indexed the minimum salary threshold for the EAP white-collar exemptions.

43.     Likewise, there is no precedent for indexing the minimum salary threshold in the regulatory history of Part 541. In its 2004 rulemaking, the DOL rejected indexing as contrary to congressional intent and as disproportionately affecting lower-wage geographic regions and industries, stating:

> [T]he Department finds nothing in the legislative or regulatory history that would support indexing or automatic increases. Although an automatic indexing mechanism has been adopted under some other statutes, Congress has not adopted indexing for the Fair Labor Standards Act. In 1990, Congress modified the FLSA to exempt certain computer employees paid an hourly wage of at least 6.5 times the minimum wage, but this standard lasted only until the next minimum wage increase six years later. In 1996, Congress froze the minimum hourly wage for the computer exemption at $27.63 (6.5 times the 1990 minimum wage of $4.25 an hour). In addition, as noted above, the Department has repeatedly rejected requests to mechanically rely on inflationary measures when setting the salary levels in the past because of concerns regarding the impact on lower wage geographic regions and industries. This reasoning applies equally when considering automatic increases to the salary levels. ***The Department believes that adopting such approaches in this rulemaking is both contrary to congressional intent and inappropriate.***

2004 Final Rule, 69 Fed. Reg. at 22171-72 (emphasis added).

44.     Finally, the Rule significantly increases the total annual compensation required to be exempt as a "highly compensated employee" to $151,164 as of January 1, 2025, up from the current $107,432, an increase of 41%) *See* 89 Fed. Reg. at 32792 (29 C.F.R. § 541.601).

45.     As noted above, DOL projects that in the first year the rule is effective, more than four million employees across the country will lose their exempt status. *See* 89 Fed. Reg. at 32900 & Table 4. By Year 10, because of the automatic increases to the minimum salary level, DOL predicts that almost 6 million employees will have lost their exempt status. *Id*. Similarly, by Year 10, the Rule will have imposed a cost of almost $3.4 billion on employers. *See id.* Just as this Court held in 2017: "Because the Final Rule would exclude so many employees who perform exempt duties, the Department fails to carry out Congress's unambiguous intent." 275 F. Supp. 3d at 807.

46.     The economic analysis set forth by DOL in support of the new Rule is inadequate due to its reliance on the Current Population Survey as the sole source of salary data; an inadequate assessment of compliance costs, transfers, benefits, regulatory flexibility analysis, and unfunded mandate impacts; an inadequate analysis of the full costs and benefits of available alternatives; and inattention to the regulatory risks inherent in a sudden change in regulatory requirements and salary test adjustment procedures. For example, DOL wholly fails to account for the salary compression issues employers will face under the 2024 Rule, and the pressure they will face to raise the salaries of non-exempt employees such as supervisors, as the salaries of their exempt subordinate employees are increased to maintain their exempt status, noting only that "the Department does not have the data to estimate this impact." 89 Fed. Reg. at 32913. It likewise fails to account for the increased costs employers will face under the Rule's unlawful automatic indexing provision as previously non-hourly employees are reclassified and fall out of the Bureau of Labor Statistics data set used to calculate the 35th percentile of lowest-wage workers. Nor does the Department meaningfully engage or address the non-financial costs of the Rule, such as the reduced morale and productivity of previously exempt employees reclassified as non-exempt under the Rule, highlighted by the Small Business Administration's Office of Advocacy in its comments on the proposed Rule, citing only difficulty in calculating these compliance costs "due to lack of data." 89 Fed. Reg. at 32947.

## COUNT I

**The 2024 Rule's Minimum Salary Threshold Exceeds DOL's Statutory Authority Under the FLSA and APA, For the Reasons Stated in *Nevada II***

47.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth here.

48.     The FLSA declares that employers shall have no obligation to pay overtime to any employee who is an executive, administrative, professional, or computer-professional employee. 29 U.S.C. § 213(a)(1).

49.     The Administrative Procedure Act, 5 U.S.C. § 706(2)(C), directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

50.     DOL's dramatic increase in the minimum salary threshold for exempt employees disqualifies millions of bona fide executive, administrative, and professional employees from the exempt status that Congress established, in violation of the FLSA and the APA. In a manner prohibited by this Court in 2017, the 2024 Rule raises the minimum salary threshold so high that the new salary threshold is no longer a plausible proxy for the categories exempted from the overtime requirement by Congress.

51.     The minimum salary threshold, taken to this extreme, has not been authorized by Congress, and the Department has exceeded its statutory authority by promulgating the 2024 Overtime Rule. [7]

52.     When an equity case ends in a permanent injunction, the trial court retains jurisdiction to enforce the injunction. *See, e.g.*, *Suntex Dairy v. Bergland*, 591 F.2d 1063, 1068 (5th Cir. 1979); *In re Corrugated Container Antitrust Litigation*, 752 F.2d 137, 142 (5th Cir. 1985). So too this Court retains jurisdiction to enforce its prior order, in that the Department has

---

[7] To the extent the Department may seek to rely on so-called "*Chevron* deference" to its interpretation of the FLSA in defense of the 2024 Rule, this Court has already determined— twice—that the Department is entitled to no such deference here. *See Nevada I*, 218 F. Supp. 3d at 530-531; *Nevada II*, 275 F. Supp. 3d at 806-07. Furthermore, it bears noting that the U.S. Supreme Court is expected to rule shortly on whether and to what extent *Chevron* remains good law. *See Loper Bright Enterprises v. Raimondo*, S. Ct. Docket No. 22-451 (oral argument held Jan. 17, 2023).

promulgated a rule that would raise the EAP minimum salary threshold to an impermissible level, such that it would effectively supplant the duties test and in and of itself be determinative of exempt status, and again included an unlawful automatic indexing mechanism.

53.     Regardless of whether the *Nevada II* decision is viewed as controlling precedent or a binding order, the result should be the same: The 2024 Rule must be enjoined to prevent the same statutory violations and irreparable harms previously identified and enjoined by this Court.

54.     As further noted above, Plaintiffs hereby preserve the argument under consideration in the *Mayfield* case in the Fifth Circuit, *i.e.*, that the FLSA does not authorize any minimum salary threshold in determining the exempt status of EAP employees. In the event that the Fifth Circuit or the Supreme Court overturns the holding in the 1966 *Wirtz* case, then the 2024 Rule should be enjoined on that additional ground.

55.     For these reasons, and as further stated in this Court's order in *Nevada II*, the 2024 Overtime Rule should be held unlawful and set aside.

## <u>COUNT II</u>

**The New Overtime Rule's Escalator Provision Exceeds the Department's Statutory Authority Under the FLSA in Violation of the Administrative Procedure Act**

56.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

57.     The Administrative Procedure Act, 5 U.S.C. § 706(2)(C), directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." It also directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be … without observance of procedure required by law." *Id.* § 706(2)(D).

58.     The escalator provision in the new Overtime Rule exceeds any authority granted to the Department by Congress, which has never authorized indexing of the minimum salary thresholds related to overtime under the FLSA.

59.     With exceptions that are not applicable here, the regulations of the Secretary referenced in Section 213(a)(1) must go through notice-and-comment rulemaking under the APA, 5 U.S.C. § 553.

60.     By purporting to implement automatic updates of the minimum salary thresholds every three years, the escalator provision in the new Overtime Rule violates the notice-and-comment rulemaking requirements of the APA.

61.     For these reasons, and as further held by this Court in *Nevada II*, the 2024 Overtime Rules automatic escalator provision should be held unlawful and set aside.

<u>**COUNT III**</u>

**The New Overtime Rule Is Arbitrary, Capricious, and Otherwise Contrary to Law in Violation of the Administrative Procedure Act**

62.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

63.     The Administrative Procedure Act, 5 U.S.C. § 706(2)(A), directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." In rulemaking under the APA, an agency may not ignore significant evidence in the record, draw conclusions that conflict with the record evidence, rely on contradictory assumptions or conclusions, consider factors that Congress did not permit the agency to address, or fail to consider an important aspect of the problem it purports to be remedying. *See Motor Vehicles Manufacturers Ass'n v. State Farm Mutual Insurance*, 463 U.S. 29, 43 (1983); *see also Michigan v. EPA*, 135 S. Ct. 2699, 2706

(2015). An agency reversing longstanding regulatory policy is required to acknowledge, explain, and justify its reversal, and such explanation must take cognizance of the strong reliance interests of the regulated community with regard to the original regulation. *See Encino Motorcars v. Navarro*, 576 U.S. 211 (2016).

64.     In promulgating the new Overtime Rule, the Department acted arbitrarily, capriciously, and otherwise not in accordance with the law in the several respects outlined above. DOL failed to provide a reasoned explanation, consistent with this Court's prior holdings and Congress's expressed intentions in the FLSA, for dramatically increasing the minimum salary standard to a level that will exclude a high percentage of all salaried employees nationally, regardless of job duties, geographic area, or size of business. To the extent that DOL acknowledged at all the regulatory change imposed by the 2024 Overtime Rule, the agency improperly minimized its departure from decades of precedent, this Court's orders, and Congressional intent.

65.     The Department likewise acted arbitrarily, capriciously, and otherwise not in accordance with the law by increasing the HCE exemption almost 41%, increasing the gap in real dollars between the standard exemption and the HCE exemption from almost $72,000 to nearly $93,000. Increasing the gap between the standard salary threshold and the HCE threshold will require employers to dedicate significant resources on administrative, human resources, and legal efforts to determine more precisely whether an employee is exempt under to the HCE exemption. Employers will be faced with the task of reviewing the basis on which each such employee was accorded exempt status, including employees for whom the exempt status decision was made a decade ago and who may be among the most highly paid employees in the company. As a result, regional variations within the same business may result in different employees in the same classification being afforded different exempt-status based almost entirely upon the location in

which they work. Moreover, when HCE employees must be reclassified as non-exempt, the issues associated with reclassification are compounded by the increased compensation level and status of such positions in the business, as these employees are likely to have various levels of advanced education and have come to expect to be treated as salaried professionals. The new Rule fails to meaningfully analyze or address these tangible and intangible costs to employers.

66.     Furthermore, it is apparent from the preamble to the Rule that DOL relied on factors that Congress did not intend for it to consider, specifically by excluding far more than the "obviously non-exempt employees" and instead excluding millions of employees who are performing bona fide exempt job duties. DOL also based its new thirty-fifth percentile salary standard on grounds that run counter to the evidence before the agency, specifically the false claim that the current salary threshold was improperly paired with the obsolete long duties test. *See* 89 Fed. Reg. at 32848.

67.     The new Overtime Rule also fails to take cognizance of the strong reliance interests of the regulated community—consisting of millions of employers across the country—whose business models have been built on the salary levels for exempt status established over the course of the past four decades. Again, DOL fails to acknowledge the radical increase in the salary threshold, which has historically been set at the 20th percentile of salaries, but will now be raised to the 35th percentile when the new Rule becomes fully effective on January 1, 2025.

68.     The nature of the Department's arbitrary and capricious minimum salary threshold is further exposed by DOL's decision to allow employers to satisfy only up to ten percent of the minimum salary level with nondiscretionary bonuses, incentives, and commissions. DOL's decision to exclude discretionary bonuses, incentives and commissions, and other types of

compensation (*e.g.*, profit-sharing, stock options, employer-funded retirement benefit, deferred compensation) is also arbitrary and capricious.

## PRAYER FOR RELIEF

69.     For the foregoing reasons, Plaintiffs pray for an order and judgement:

a.  Vacating and setting aside the new Overtime Rule under 5 U.S.C. § 706.

b.  Declaring that the new Overtime Rule was promulgated by Defendants in excess of statutory jurisdiction, authority, or limitations under 5 U.S.C. § 706(2)(C); is arbitrary, capricious, or otherwise contrary to law within the meaning of 5 U.S.C. § 706(2)(A); and was promulgated without observance of procedures required by law within the meaning of 5 U.S.C. § 706(2)(D);

c.  Enjoining Defendants and all its officers, employees, and agents from implementing, applying, or taking any action whatsoever under the 2024 Overtime Rule anywhere within Defendants' jurisdiction to implement the challenged 2024 Rule;

d.  Issuing all process necessary and appropriate to postpone the effective date of the Overtime Rule and to maintain the status quo pending the Court's review of this case, including by issuing relief under 5 U.S.C. § 705;

e.  Awarding Plaintiffs their reasonable costs and expenses, including reasonable attorneys' fees under the Equal Access to Justice Act or otherwise, incurred in bringing this action; and

f.  Granting such other and further relief as this Court deems just and proper.

Dated: May 22, 2024        Respectfully submitted,

*/s/ Robert F. Friedman*

Robert F. Friedman

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
(214) 880-8101 (Fax)
rfriedman@littler.com

Maurice Baskin (*pro hac vice* pending)
James A. Paretti, Jr. (*pro hac vice* pending)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com

*Attorneys For All Plaintiffs*

Angelo I. Amador (*pro hac vice* pending)
Restaurant Law Center
2055 L Street, NW
Suite 700
Washington, DC 20036
(202) 331-5913

*Counsel for the Restaurant Law Center*